UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MITCHELL MONTGOMERY, No. 98-B-1838

          Petitioner,

_____

                    -v-                    03-CV-0270Sr
                                           **ORDER**
EDWARD R. DONNELLY, Superintendent
of Wende Correctional Facility

          Respondent.

_____

_____


## INTRODUCTION

On March 30, 2003, petitioner Mitchell Montgomery ("Montgomery," "Petitioner") filed a pro se petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.


## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 12, 1997, Petitioner was indicted on charges of one count of second degree burglary (Penal Law § 140.25(2)), a class C violent felony offense (Penal Law § 70.02(1)(b)), one count of criminal possession of stolen property in the fifth degree (Penal Law § 165.40), a class A misdemeanor, one count of second degree assault (Penal Law § 120.05(3)), a class D violent felony offense (Penal Law § 70.02(1)(c)), one count of resisting arrest (Penal Law § 205.30), a class A misdemeanor, and one count of second degree escape,(Penal Law § 205.10(2)), a class E felony.

On May 20, 1998, following a jury trial, Petitioner was convicted of Burglary in the Second Degree (Penal Law § 140.25(2)),

Criminal Possession of Stolen Property in the Fifth Degree (Penal Law § 165.40), Assault in the Second Degree (Penal Law § 120.05(3)), Resisting Arrest (Penal Law § 205.30), and Escape in the Third Degree (Penal Law § 205.05). The Erie County Supreme Court sentenced Petitioner, a persistent violent felony offender, to various concurrent sentences, the longest of which were two terms of 18 years to life incarceration on his convictions for Second Degree Burglary and Second Degree Assault.

Petitioner appealed the judgment to the New York State Supreme Court, Appellate Division, Fourth Department. On November 9, 2001, the Appellate Division unanimously affirmed Petitioner's conviction. Petitioner then sought leave to appeal to the New York State Court of Appeals, which was denied on January 4, 2002. Montgomery is currently incarcerated at the Wende Correctional Facility pursuant to his judgment of conviction.

The conviction stems from an incident that occurred at about 8 p.m. on July 7, 1997. According to evidence introduced at trial, Ms. Rita Verel saw Petitioner on the porch of Ms. Sarah Kennedy's residence at 8 Flower Street, in the city of Buffalo, New York. Verel lived nearby, and out of concern for Kennedy and her three house-mates, she walked over and asked Montgomery, who was wearing camouflage fatigues, what he was doing there. (T. 60-62).[1] In responding to Verel, Petitioner came within one foot of her. Verel

---

[1] "T." shall hereafter refer to the trial transcript.

became frightened and left, but observed Petitioner get into the passenger side of a van and drive up Tyler Street. (T. 62-63).

Specifically Verel went to the home of another neighbor, Kevin McNerney, and told him what she had seen. (T. 64, 111). McNerney began observing the van and called 911 several times. (T. 112, 115). The van stopped at 17 Flower Street and McNerney saw Petitioner get out of the van. (T. 65). McNerney watched as Petitioner went into a driveway on Flower Street and emerged riding a bicycle that was too small for him. (T. 66-67, 112-113). McNerney saw a dark fabric sack draped over the handlebars. (T. 127). Verel also saw the fabric sack, referring to it at trial as a brown bag. (T. 67). Petitioner turned and looked at McNerney, and then returned the bicycle to the driveway he had taken it from. Id. Petitioner then disappeared through the back yard of 32 Flower Street. (T. 67-68).

City of Buffalo Police Officers Zagara and Wilke heard two radio dispatch calls about a prowler in the area of Flower Street. (Pg. 136-38). They saw a man who fit the description of the prowler near a public telephone three blocks from 8 Flower Street. (T. 136-49, 154). It was later determined that this man was Montgomery. Officer Zagara saw a cloth book bag at Montgomery's feet, and visible among its contents was a camera with a telescopic lens. (T. 140-41). According to Officer Zagara, Montgomery said "Okay, okay, the camera in the bag is hot." (T. 141). Montgomery

then told Officer Wilke that the bag was his; that he had just bought the camera at a sandwich shop, and that it was stolen. (T. 170-71).

In the meantime, Ms. Verel set out to find the prowler herself, and upon seeing him with the officers, identified Montgomery as the person whom she had seen earlier. (T. 71-72, 144). The officers brought Petitioner back to Flower Street, where Officer Zagara investigated the interior of a home located at 8 Flower Street, while Officer Wilke waited outside by the patrol vehicle. Officer Zagara discovered that the front living room window and screen were off the sill, and that the back door was open despite no one being home. The house had been ransacked. (T. 145-46).

While Officer Zagara was investigating, McNerney came up to the patrol vehicle and identified Montgomery as the person which prompted him to call 911. (T. 118, 150-51). Petitioner then fled the patrol car and was pursued by Officers Wilke and Panus on foot while Officer Zagara and another officer chased him in a patrol car. (T. 118, 147-48, 176). Officer Panus caught up with Montgomery at the end of Flower Street. Officer Panus attempted to take Petitioner down to the ground and Officer Wilke assisted by pulling Petitioner's feet from under him. Montgomery kicked Officer Wilke in the hand, jamming and breaking Officer Wilke's right hand pinky and ring fingers. (T. 147-48, 176-78). The next

day Officer Wilke underwent six hours of surgery to bring his two fingers back into normal configuration. (T. 176-79).

Petitioner was returned to 8 Flower Street where Officer Zagara administered Miranda warnings to him. (T. 151). Officer Zagara did not ask Petitioner any questions, but Petitioner volunteered, "If I tell you the guy's name who helped me will you let me go and give me a break?" (T. 151). Officer Zagara replied, "No deal. You're in handcuffs, you're staying there." (T. 152).

Ms. Kennedy testified at trial that she resided at 8 Flower Street on July 7, 1997. (T. 193). She also stated that Petitioner did not have permission to enter her house. (T. 196). When Kennedy returned to her home at around 9:30 p.m. that night, she was met by the police and her neighbors. The lower level of the house was not disturbed, but her upstairs bedroom was torn apart. She could not find her camera, lens, or her spare set of car keys. (T. 196-98). A police officer showed her book bag to her, wherein she found her camera, lens, spare keys and tampons. (T. 198-99).

## DISCUSSION

### I. Petitioner's Claims

In his pro se petition for a writ of habeas corpus, Montgomery claims that: (1) the trial court's Sandoval ruling was an abuse of discretion and thereby deprived Petitioner of a fair trial; (2) the burglary conviction was against the weight of the evidence; (3) the trial court erred by not granting defense counsel's request for a

mistrial following the People's summation; (4) the sentence of 18 years to life as a persistent violent felony offender was harsh and excessive and should be modified; (5) the trial court erred when it denied defense counsel's motion to dismiss the burglary count, and therefore denied him his right to due process; (6) he was denied effective assistance of trial counsel because counsel failed to move to preclude the prejudicial admission of un-charged crimes and failed to object to such testimony, thereby denying him due process and a fair trial; (7) the trial court erred by not making a justification charge in the assault count, although defense counsel did not request such a charge; and (8) the trial court committed reversible error when it improperly charged the jury regarding the assault and resisting arrest charges, thereby removing critical elements from the jury's consideration.

## II. Exhaustion Requirement

Before examining the merits of petitioner's claims, it is necessary to consider whether Petitioner exhausted his state court remedies. An application for a writ of habeas corpus by a person in the custody of a state will not issue unless the petitioner has exhausted all state court remedies. 28 U.S.C. § 2254(b)(1)(A). To exhaust a claim, a petitioner must present it to the "highest state court from which a decision can be had." Daye v. Attorney General, 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc), on remand, 712 F.2d 1566 (2d Cir. 1983), cert. denied, 464 U.S. 1048 (1984); see also

<u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971). A petitioner may show that his federal claims were exhausted by demonstrating that the claims presented to the state court, inter alia: "(a) [relied] on pertinent federal cases employing constitutional analysis, (b) [relied] on state cases employing constitutional analysis, (c) [asserted his] claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) [alleged] a pattern of facts that is well within the mainstream of constitutional litigation." <u>Smith v. Duncan</u>, 411 F.3d 340, 348 (2d Cir. 2005) (citing <u>Daye</u>, 696 F.2d at 194).

Petitioner failed to raise his 2nd, 4th, and 7th claims (the weight of the evidence claim, the excessive sentence claim, and the court's failure to charge justification claim, respectively) in his application for leave to appeal to the New York Court of Appeals. <u>See</u> November 16, 2001 Petitioner's application for a certificate granting leave to appeal to the New York Court of Appeals, attached as Exhibit A to the record. Petitioner's 2nd and 4th claims were not reviewable in the Court of Appeals, but his 7th claim was. The New York Court of Appeals only has authority to review questions of law. The weight of the evidence claim involves factual review which is within the authority of the Appellate Division. N.Y. Crim. Proc. Law § 470.15. The modification of a sentence on the basis that it was harsh and excessive also involves the discretionary power of review by the Appellate Division in the

interests of justice.  Therefore Petitioner's 2nd and 4th claims were not reviewable by the Court of Appeals because they did not involve questions of law, except for Petitioner's 7th claim which was reviewable because it did present a question of law.  I find that Petitioner did not present his failure to charge justification claim to the highest state court, and therefore it is unexhausted.

Generally, a federal court will not entertain a habeas corpus petition from a state prisoner unless the prisoner has exhausted state court remedies.  <u>Picard</u>, 404 U.S. at 275.  In addition, a petition that contains both exhausted and unexhausted claims should be dismissed so that the state courts have an opportunity to decide the unexhausted issues. <u>Rose v. Lundy</u>, 455 U.S. 509, 510 (1982).

Under the AEDPA, however, federal courts may now deny an application on the merits, notwithstanding a petitioner's failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).  This allows courts to deny habeas petitions that contain unexhausted claims that are deemed patently frivolous. <u>Brown v. State</u>, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005); <u>see</u> <u>also</u> <u>Edkin v. Travis</u>, 969 F. Supp. 139, 140 n. 1 (W.D.N.Y. 1997). Accordingly, I will address petitioner's unexhausted claims although the state courts have not had an opportunity to address all of them.

**III. Procedural Default**

Respondent submits that Petitioner's 7th and 8th claims (failure to charge justification and improper jury instructions

regarding assault and resisting arrest charges, respectively) are procedurally defaulted, and therefore cannot be reviewed by this Court. A federal court may not review a federal question on habeas review if the state court's decision regarding the claim clearly "rests upon adequate and independent state grounds." Harris v. Reed, 489 U.S. 255, 261 (1989) (citations and internal quotation marks omitted). "A state procedural default qualifies as an adequate and independent ground unless the petitioner shows 'cause for the default and prejudice resulting therefrom.'" Levine v. Comm'r of Correctional Services, 44. F.3d 121, (2d Cir. 1995) (citing Gonzalez v. Sullivan, 934 F.2d 419, 421 (2d Cir. 1991) (citations omitted). "[A]s long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas." Harris, 489 U.S. at 264 n. 10.

A procedural bar forecloses federal habeas review only where it constitutes both an "independent" and "adequate" state law ground for deciding the claim. Id. at 261. In the instant case, the Appellate Division declined to address the failure to charge justification and the improper jury instruction claims because Petitioner failed to preserve those objections at trial. I find that it is clear that the Appellate Division was relying on an "independent" state procedural rule (i.e., C.P.L. § 470.05(2)(a))

and not on any rule of federal law in denying review of Petitioner's justification charge and jury instruction claims. Thus, it only remains to be determined whether the rule relied upon was "adequate" to support the decision.

A procedural bar is "adequate" if it is based on a rule that is "'firmly established and regularly followed' by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)). Whether application of the procedural rule is "firmly established and regularly followed" must be judged in the context of "the specific circumstances presented in the case[.]" <u>Cotto v. Herbert</u>, 331 F.3d 217, 240 (2d Cir. 2003) (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 386-87 (2002)); <u>Hathorn v. Lovorn</u>, 457 U.S. 255, 263 (1982) ("State courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims.").

Section 470.05(2) of the New York State Criminal Procedure Law is "a state law ground on which the New York appellate court's decision is based, and that ground is . . . adequate under firmly established and regularly followed state law," and its purpose is to give the trial court a "fair opportunity to rule on an issue of law before it can be raised on appeal." <u>Garvey v. Duncan</u>, 485 F.3d 709, 720 (2d Cir. 2007). In this case, the Appellate Division declined to address the failure to charge justification and improper jury instruction claims because Petitioner did not object

to the charge at the trial court level.  Because the Court's ruling is in accordance with the requirements of Section 470.05(2) of the New York Criminal Procedure Law, I find that the court's decision rested upon adequate state grounds.  Accordingly, Petitioner's failure to charge justification and improper jury instruction claims are procedurally defaulted for the purposes of federal habeas review.

Because Petitioner's claims of the trial court's failure to charge justification and improper jury instruction are procedurally defaulted, this Court may consider the merits of those claims only if the petitioner shows: 1) cause for the default and actual prejudice; or 2) that the failure to consider the claim will result in a fundamental miscarriage of justice because the petitioner is actually innocent of the crime.  Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that Petitioner received constitutionally ineffective assistance of counsel. Murray v. Carrier, 477 U.S. 478 (1986).

Petitioner has failed to show any objective factor external to the defense that impeded counsel's efforts to comply with the State's procedural rule.  I find that Petitioner has not established cause for his failure to object to the jury

instructions at the trial level. Therefore, this Court need not consider whether Petitioner has been prejudiced by his procedural default. See Minigan v. Donnelly, 2007 WL 542137, at 11 (W.D.N.Y. Feb. 16, 2007) (citing Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982) ("Since we conclude that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice."); McCleskey v. Zant, 499 U.S. 467, 502 (1991).

Having failed to show cause for his default, in order to have his claims heard by this Court, Petitioner must show that because he is actually innocent, a miscarriage of justice would occur if the claims were not heard. Aparicio, 269 F.3d at 90. To establish actual innocence, a "petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citing Schlup v. Delo, 513 U.S. 298, 321-22 (1995)). However, "credible claims of actual innocence are 'extremely rare.'" Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). In this case, given the substantial physical evidence and testimony of the police, victim and witnesses, I find that the Petitioner has failed to establish that it is more likely than not that a reasonable juror would not have convicted him of the crimes charged. Therefore, Petitioner cannot show that a miscarriage of justice would occur should his failure to charge justification and improper jury instruction claims be procedurally barred.

Since Petitioner lacks cause for his default and has failed to establish that a miscarriage of justice would occur if his claims were not heard, both his failure to charge justification and improper jury instruction claims must, therefore, be dismissed without reaching the merits. Murray, 477 U.S. at 492; Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

## IV. Exhausted Claims

### A. The Habeas Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 375-76 (2000). An "adjudication on the merits" is substantive, rather than a procedural, resolution of a federal claim. Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2000). Federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Cupp v. Naughten, 414 U.S. 141, 146 (1970).

Petitioner's remaining claims were adjudicated on the merits by the Appellate Division, Fourth Department. People v. Montgomery, 732 N.Y.S.2d 389 (App. Div. 4th Dept. 2001).

### B.    The Sandoval Ruling

Montgomery contends that the trial court abused its discretion in ruling that if he testified at trial, the prosecutor would be allowed to ask limited questions about his past criminal convictions. However, Petitioner did not testify at trial. Claims regarding the effect of a trial court's Sandoval ruling do not raise a constitutional issue cognizable on habeas when, as here, the habeas petitioner did not testify at his criminal trial. The Supreme Court held in Luce. v. United States, 469 U.S. 38, 41 (1984) that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Whether the challenge to a Sandoval ruling can become constitutional depends on whether prejudice is established, but unless a defendant actually testifies, any assessment of prejudice is "wholly speculative." Id. I find that since Petitioner did not testify at his trial no constitutional issue was raised and he is not entitled to relief on this claim.

### C.   Weight of the Evidence

Petitioner claims that his burglary conviction was against the weight of the evidence. This claim derives from C.P.L. §470.15(5), which permits an appellate court in New York State to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y.Crim. Proc. Law §470.15(5). Thus, a "weight of the evidence" argument presents only a state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. §2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding. Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence..."),

aff'd, 263 U.S. 255 (1923); <u>Garrett v. Perlman</u>, 438 F.Supp.2d 467, 470 (S.D.N.Y.2006) (same); <u>Garbez v. Greiner</u>, 2002 WL 1760960, at *8 (S.D.N.Y.2002) ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."). Accordingly, I find Petitioner's claim that his verdict was against the weight of the evidence is a state law claim that does not present a federal constitutional issue cognizable on habeas review. Thus, the Petitioner is not entitled to habeas relief on this ground.

**D.    Prosecutorial Misconduct**

Petitioner claims that he was denied due process because of prosecutorial misconduct during summation. When the prosecutor concluded his summation, defense counsel moved for a "mistrial or a curative instruction" on grounds that the prosecutor allegedly referred to a theory of accessorial liability even though the court would not instruct the jury on that theory, and that the prosecutor improperly characterized the defense case as being based on police testimony lacking credibility. Counsel also said that the prosecutor improperly vouched for the credibility of witness Rita Verel.

The court denied the motion, but after a recess, the court told the jury that both counsel commented on the evidence and

suggested certain inferences and conclusions which the jury could accept or reject.  (T. 263, 266).  The court also stated that an attorney cannot vouch for the credibility of a witness and that the jurors are the judges of credibility.  <u>Id.</u>  The court instructed the jury to "strike that from your mind" if either counsel vouched for the credibility of a witness.  (T. 267).

On appeal, counsel set out the bases for the mistrial motion, but only argued that the prosecutor's mischaracterization of the defense case required reversal.  The leave application was also restricted to that argument.  Counsel argued that the prosecutor improperly "distorted" the defense case.  The Appellate Division, Fourth Department, concluded that the prosecutor's comments were made in fair response to defense counsel's summation.

In examining a claim of a constitutional violation based on prosecutorial misconduct, a court judges the fairness of the trial, rather than the culpability of the prosecutor.  <u>Smith v. Phillips</u>, 455 U.S. 209 (1982).  To constitute misconduct, the prosecutor must make statements that "so infect . . . the trial with unfairness as to make the resulting conviction a denial of due process."  <u>Darden v. Wainwright</u>, 477 U.S. 168, 182.  The prosecutor's remarks must be considered in the context of the entire trial.  <u>U.S. v. Espinal</u>, 981 F.2d 664, 666.

Respondent submits that the prosecutor's remarks were responsive to the defense summation, and did not undermine the

fairness of the trial.  In the opening statement, defense counsel disputed that Petitioner had told officers that a stolen camera that he was carrying was "hot."  (T. 39).  On summation, defense counsel suggested that Petitioner had not made statements about a van.  Respondent submits that in light of defense counsel's efforts, the prosecutor was free to argue that there was no evidence of any bias or other motive for the officers to exaggerate or fabricate testimony.  (T. 248).  See Stone v. Stinson, 121 F.Supp.2d 226, 244.

The Appellate Division's finding was not contrary to well-settled Supreme Court precedent.  I find that the prosecutor's comments were made in fair response to defense counsel's opening statement and summation, and did not adversely affect the fairness of the trial.  Therefore, Petitioner is not entitled to relief on this ground.

### D.  Harsh and Excessive Sentence

Montgomery contends that his sentence of two concurrent terms of 18 years to life for Second Degree Burglary and Second Degree Assault is overly harsh and excessive.  Petitioner is a persistent violent felony offender, and was sentenced as such according to New York State Penal law.  Pursuant to that law, when a court has found that a person is a persistent violent felony offender, the court must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life imprisonment.  Penal Law § 70.08.  On

appeal, Petitioner specifically stated that he was not challenging the sentence's legality, only its harshness. See pg. 22, May 23, 2001 Brief for the Appellant, attached as Exhibit B to the record. Petitioner asks this Court to exercise its discretion and reduce the sentence.

Montgomery's assertion that the trial court abused its discretion is generally not a federal claim subject to review by a federal habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996). In the instant case, the sentence received by Montgomery falls within the range mandated by New York law. Accordingly, I find that Petitioner has failed to raise a constitutional issue regarding the imposition of the sentence, and therefore cannot obtain habeas review by this Court.

**E.   Legal Sufficiency of the Evidence**

Petitioner claims that the evidence of his guilt adduced at trial was legally insufficient to support the burglary conviction. Respondent submits that the Appellate Division's ruling that the evidence was legally sufficient was correct, and was not contrary to, nor did it involve an unreasonable application of, settled constitutional law.

A person may be found guilty of burglary in the second degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and if: (1) In effecting entry or while in the building or in immediate flight therefrom, he or another participant in the crime: (a) Is armed with explosives or a deadly weapon; or (b) Causes physical injury to any person who is not a participant in the crime; or (c) Uses or threatens the immediate use of a dangerous instrument; or (d) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or (2) The building is a dwelling.   Penal Law § 140.25(2).

Federal review of a state sufficiency challenge is governed by <u>Virginia v. Jackson</u>, 443 U.S. 307, 318-20 (1979), and requires the reviewing court to view the evidence in the light most favorable to the People to ensure that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Given the testimony of witnesses and other evidence, I find that a

rational jury could draw the necessary inferences to conclude that Petitioner had entered the Kennedy residence (a dwelling) and taken the items that were soon thereafter found on his person. The state court's determination that the evidence was sufficient to establish Montgomery's guilt did not involve an unreasonable application of federal constitutional law, and therefore, Petitioner is not entitled to relief on this ground.

### F. Ineffective Assistance of Counsel

Petitioner claimed on direct appeal that his trial counsel was ineffective. The basis for the claim was that trial counsel did not object to what Petitioner considered inadmissible evidence that he had committed uncharged crimes. The Appellate Division found that Petitioner was not denied his right to the effective assistance of counsel, and Respondent submits that this conclusion was correct, and was not contrary to, nor did it involve an unreasonable application of, settled Supreme Court precedent.

To prevail on a claim of ineffective assistance of counsel under the standard established in Strickland v. Washington, 466 U.S. 688 (1984), the petitioner must ordinarily demonstrate that counsel's representation fell below an objective standard of reasonableness. Even when the presumption that counsel provided reasonable professional assistance is overcome, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different," and because of that, the defendant suffered prejudice. Id. at 694.

Montgomery did not claim that counsel's overall performance was ineffective, but rather that counsel failed to object to evidence that Montgomery claims was inadmissible. The evidence was a volunteered answer by Officer Zagara stating that he and his partner were in the vicinity of the burglary because of an earlier radio call complaining about a prowler. Officer Zagara added that the prowler's appearance matched the description of the suspect in the Flower Street burglary. (T. 139).

Counsel did not consider these statements as constituting evidence of a new crime since there was no suggestion that the prowler had committed a crime. Respondent submits that defense counsel could, in his professional judgment, forego any available objection to the word prowler, because it was not prejudicial. There was no evidence of the prowler committing a crime, and Petitioner did not possess stolen property that had been taken from any other residence where the prowler had been sighted. I find that defense counsel's failure to object to Officer Zagara's testimony was objectively reasonable.

Petitioner also complains that counsel failed to object to evidence that he committed an uncharged crime- his temporary use of a bicycle. (T. 66-67; 113). Ms Verel and Mr. McNerney saw

Petitioner take a short ride on the bicycle, before he returned it and fled Flower Street on foot.

In New York, evidence of uncharged crimes is admissible if it is relevant to a material issue at trial and its probative value outweighs its potential for prejudice. See People v. Alvino, 71 N.Y.2d 233, 241-242. The evidence should be allowed if it "was an integral part of the sequence of events of the crime with which [the petitioner] was charged." Pena v. Fischer, 2003 WL 1990331, (S.D.N.Y. Apr 30, 2003). Respondent submits that the testimony about the bicycle ride did not constitute prejudicial evidence of an uncharged crime because it was part of the narrative of Petitioner's flight from the crime scene.

I find that the testimony of Petitioner's bicycle ride was an integral part of the sequence of events comprising the crimes Petitioner was charged with, and was admissible in court. Therefore defense counsel's failure to object to such testimony was objectively reasonable. Petitioner is not entitled to relief upon his ineffective assistance of counsel claim.

**CONCLUSION**

For the reasons stated above, Mitchell Montgomery's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Montgomery has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C.

§2253. The Court further certifies that pursuant to 28 U.S.C. §1915(a)(3), any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.

**ALL OF THE ABOVE IS SO ORDERED.**

                             s/Michael A. Telesca
_____
                        MICHAEL A. TELESCA
                   United States District Judge

Dated:   July 20, 2009
         Rochester, New York